SARPY COUNTY BOARD OF COMMISSIONERS, APPELLANT, V.
SARPY COUNTY LAND REUTILIZATION COMMISSION,
A POLITICAL SUBDIVISION, ET AL., APPELLEES.
615 N.W.2d 490

Filed August 1, 2000.    No. A-99-212.

Jim Miller, Sarpy County Attorney, and Michael A. Smith for appellant.

William T. Ginsburg for appellees.

SIEVERS and INBODY, Judges, and BUCKLEY, District Judge, Retired.

SIEVERS, Judge.

The Sarpy County Board of Commissioners (Board) brought a petition in error to challenge a decision by the Sarpy County Land Reutilization Commission (Commission) to sell a piece of property within its inventory to the City of Springfield for $1, rather than open a bidding process to six private individuals who had submitted bids for the property. By statute, the Commission can either sell the property through a bidding process or give it to a government agency for public use. In this instance, the Commission sold the property for $1 to Springfield for use as a park. Both parties filed motions for summary judgment, after which the district court for Sarpy County entered summary judgment for the Commission. The Board timely filed this appeal.

## BACKGROUND

The Commission is a statutory body, created by Neb. Rev. Stat. § 77-3201 et seq. (Reissue 1996 & Cum. Supp. 1998), whose purpose is to manage and dispose of real estate acquired through tax foreclosures to "foster the public purpose of returning land which is in a nonrevenue-generating, nontax-producing status to effective utilization in order to provide housing, new industry, and jobs for the citizens of the county and new tax revenue for the county." § 77-3201(2). The Commission maintains an inventory of property which it has acquired and which § 77-3206(2) directs it to classify as (1) suitable for private use, (2) suitable for use by a public agency, and (3) not presently useable and held as a "public land reserve." When permanently disposing of property, two options are available to the Commission: sell the property through a bidding process or transfer the property to a government agency for public use. See § 77-3206(3). The Commission has the "sole discretion" under § 77-3206(4) to dispose of such property within a set of statutory procedures, but those procedures do not delineate when a sale shall be made as opposed to a gift made to a public entity. See § 77-3205(4).

In the fall of 1998, the Commission's inventory included a piece of property described as "Lot 154A, Highview Addition,"

Springfield, Sarpy County, Nebraska (hereinafter the property). During the September 17, 1998, Commission meeting, disposition of the property was considered and decided. Before the meeting, the Commission had received bids from six private individuals who were interested in purchasing the property. Each bidder had deposited $700, which represented 20 percent of the land's appraised value of $3,500. Springfield put in a "bid" for $1. At the conclusion of an executive session, the Commission decided to sell the property to Springfield for $1, thereby rejecting the bids submitted by the various private individuals.

On October 9, 1998, the Board filed a petition-in-error proceeding asking the district court to vacate and reverse the Commission's action of selling the property to Springfield. Motions for summary judgment were filed by both the Commission and the Board, which were heard on December 18. On January 26, 1999, the district court entered an order affirming the Commission's decision. The Board now appeals.

## ASSIGNMENTS OF ERROR

The Board asserts the district court erred in affirming the Commission's action because (1) the property was sold for less that two-thirds its appraised value without unanimous consent as required by § 77-3205, (2) the Commission failed to properly classify the property pursuant to § 77-3206(2) prior to selling the property, (3) the Commission failed to allow interested parties to bid on the property as required by Commission rules, and (4) the Commission illegally considered the matter in executive session.

## STANDARD OF REVIEW

Although an appellate court ordinarily considers only those errors assigned and discussed in the briefs, we may, at our option, notice plain error. *In re Interest of D.W.*, 249 Neb. 133, 542 N.W.2d 407 (1996); *In re Estate of Morse*, 248 Neb. 896, 540 N.W.2d 131 (1995). Moreover, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *In re Interest of Artharena D.*, 253 Neb. 613, 571 N.W.2d 608 (1997). Such examination includes consideration of whether the appellant has satisfied the requirement of standing, which is a jurisdictional requirement. *Id.*

Standing is a jurisdictional component of a party's case because only a party who has standing may invoke the jurisdiction of a court. *Cotton v. Steele*, 255 Neb. 892, 587 N.W.2d 693 (1999); *Hawkes v. Lewis*, 255 Neb. 447, 586 N.W.2d 430 (1998). Determination of a jurisdictional issue which does not involve a factual dispute is a matter of law which requires an appellate court to reach an independent conclusion. *Cotton, supra*; *Hawkes, supra*.

## ANALYSIS

We first examine the question of jurisdiction over the matter presented to the district court, irrespective of whether jurisdiction was raised or considered by the district court. See, *In re Interest of Anthony G.*, 255 Neb. 442, 586 N.W.2d 427 (1998); *In re Interest of Artharena D., supra*. Initially, we consider whether the Board has standing to bring the present action, a petition-in-error proceeding, brought under Neb. Rev. Stat. § 25-1901 (Cum. Supp. 1998), which provides:

A judgment rendered or final order made by any tribunal, board, or officer exercising judicial functions and inferior in jurisdiction to the district court may be reversed, vacated, or modified by the district court, except that the district court shall not have jurisdiction over appeals from a juvenile court as defined in section 43-245 or appeals from a county court in matters arising under the Nebraska Probate Code, in matters involving adoption or inheritance tax, or in domestic relations matters.

The Commission received seven offers to purchase the property: six from private purchasers at appraised value and one from Springfield for $1. The Board was not involved in the Commission's decisionmaking process nor was the Board a prospective buyer. The Board, obviously unhappy with the Commission's decision to sell the property to Springfield for $1, challenges the Commission's decision by resorting to the district court. The Board must have standing to invoke the jurisdiction of the district court.

In order to have standing, one must have some legal or equitable right, title, or interest in the subject of the controversy. *Hawkes, supra*. The purpose of a standing inquiry is to deter-

mine whether one has a legally protectable interest or right in the controversy that would benefit by the relief to be granted. *Id.* Standing relates to a court's power, that is, jurisdiction, to address the issues presented and serves to identify those disputes which are appropriately resolved through the judicial process. *Id.* Under the doctrine of standing, a court may decline to determine the merits of a legal claim because the party advancing it is not properly situated to be entitled to its judicial determination. See *id.*

We have previously summarized these notions in *SID No. 347 v. City of Omaha*, 8 Neb. App. 78, 85-86, 589 N.W.2d 160, 166 (1999):

The general legal doctrines which apply to determine standing are well established. Before a party is entitled to invoke a court's jurisdiction, that party must have standing to sue, which involves having a real interest in the cause of action. [Citation omitted.] To have standing to sue, a party must have some legal or equitable right, title, or interest in the subject matter of the controversy, and the purpose of the standing inquiry is to determine whether the party has a legally protected interest or right in the controversy that would be benefited by the relief to be granted. [Citation omitted.] In situations where a party seeks to restrain an act of a municipal body, as is the case here, the party must show some special injury peculiar to himself aside from a general injury to the public, and it is not sufficient that the party bringing the suit has merely a general interest common to all members of the public.

We find that these general principles of standing apply equally when a party seeks to restrain an act of a statutorily created commission as here, instead of the act of a municipal body as in *SID No. 347, supra.* Thus, the Board must show some special injury peculiar to itself aside from general injury to the public in order to have standing to bring a suit challenging the Commission's actions.

The record shows an appraisal of the property for $3,500, and Neb. Rev. Stat. § 23-119 (Reissue 1997) makes it the duty of a county board to "cause to be annually levied and collected taxes authorized by law for county purposes." Additionally, the

Commission is statutorily directed to "foster the public purpose of returning land . . . to effective utilization in order to provide . . . new tax revenue for the county." § 77-3201. Moreover, § 77-3209 sets forth what happens with the funds when the Commission sells a piece of property. After payment of the cost of sale and property management, penalties, and fees or costs included in the judgment originally entered against the property, then, there is the third level of priority which is that the balance be paid to respective taxing authorities. Thus, in addition to taxes to be collected in the future, the Board as a taxing authority has a statutory right to collect past-due taxes, after expenses are paid. Unpaid taxes was how the property came to be under the Commission's jurisdiction in the first place.

The Board generally oversees the operation of Sarpy County as its governing body and levies and collects real estate taxes; plus, it has a statutory right to proceeds if the property is sold. These things are sufficient to give it a real interest and potentially cause it real injury when the property is sold for a nominal amount, such as $1, to a public entity, causing the loss of the chance to collect the past-due taxes as well as future tax revenues by the property's removal from the tax rolls. See, Neb. Const. art. VIII, § 2; Neb. Rev. Stat. § 77-202 (Cum. Supp. 1998) (providing for exemption from taxation for public property). We therefore find the Board has standing to challenge the Commission's action.

*Is This Case a Proper Subject for Petition in Error?*

There is a second component of our jurisdictional inquiry. The Board filed a petition in error. A petition in error is a statutory creation which is limited to a review of a "judgment rendered or final order made by any tribunal, board, or officer exercising judicial functions and inferior in jurisdiction to the district court." § 25-1901. Thus, the question becomes whether the Commission is exercising judicial (or quasi-judicial) functions. A commission exercises a judicial function if it decides a dispute of adjudicative fact or if a statute requires it to act in a judicial manner. *Kropp v. Grand Island Pub. Sch. Dist. No. 2*, 246 Neb. 138, 517 N.W.2d 113 (1994). See, *Thomas v. Lincoln Public Schools*, 228 Neb. 11, 421 N.W.2d 8 (1988); *Richardson*

*v. Board of Education*, 206 Neb. 18, 290 N.W.2d 803 (1980); *Kosmicki v. Kowalski*, 184 Neb. 639, 171 N.W.2d 172 (1969).

■ "Adjudicative facts" are facts which relate to a specific party and are adduced from formal proof. *Kropp, supra*, citing *Van Fossen v. Board of Governors*, 228 Neb. 579, 423 N.W.2d 458 (1988), and *State v. Freeman*, 440 P.2d 744 (Okla. 1968). Adjudicative facts pertain to questions of who did what, where, when, how, why, and with what motive or intent. *Kropp, supra*, citing *Wood County Bank v. Camp*, 348 F. Supp. 1321 (D.D.C. 1972), and *People v Forbush*, 170 Mich. App. 294, 427 N.W.2d 622 (1988). "They are roughly the kind of facts which would go to a jury in a jury case." *Kropp*, 246 Neb. at 141, 517 N.W.2d at 115.

In *Kropp*, Karen Kropp was a teacher and disputed her placement in the salary schedule by her school board. She instituted grievance proceedings. Being dissatisfied with the result of that proceeding, she filed a petition in error in the district court, which upheld the school board. The Supreme Court in *Kropp* found that the school board did not decide any dispute of adjudicative fact, that the statutes cited by Kropp did not require the board to act in a judicial manner, and that as a result, the district court lacked jurisdiction to hear Kropp's petition in error.

■ The issue in the present case is whether the Commission's property disposal decisions are ministerial, adjudicative, or something else. This issue has not been addressed by the Nebraska appellate courts. The general rule is that an act is ministerial if there is an absolute duty to perform in a specified manner upon the existence of certain facts. *Krolikowski v. Nesbitt*, 257 Neb. 421, 598 N.W.2d 45 (1999). See *State ex rel. Herman v. City of Grand Island*, 145 Neb. 150, 15 N.W.2d 341 (1944). The Land Reutilization Act does not tell us how the Commission is to manage and dispose of property which it classifies as suitable for both a public and a private purpose under § 77-3206(2) as was done with this property. In fact, § 77-3206(4) allows the Commission to manage and sell property under its jurisdiction using its sole discretion. This seems to clearly be the antithesis of ministerial duties. The Commission is under no absolute duty to act in a particular manner upon the existence of certain facts. Therefore, the classification and trans-

fer of property within the Commission's inventory is not ministerial in nature.

We next consider whether such decisions by the Commission are adjudicative in nature. "When the law, in words or by implication, commits to any officer the duty of looking into facts, and acting upon them, not in a way which it specifically directs, but after a discretion in its nature judicial, the function is termed quasi-judicial." *State ex rel. School Dist. v. Ellis*, 163 Neb. 86, 96, 77 N.W.2d 809, 815 (1956). See *Little v. Board of County Commissioners*, 179 Neb. 655, 140 N.W.2d 1 (1966). The fact that the Commission is required to hold a hearing does not transform the proceeding into a quasi-judicial one. See *Singleton v. Kimball County Board of Commissioners*, 203 Neb. 429, 279 N.W.2d 112 (1979). The problem here is that while the Commission may well need to look into facts to perform its duties in good faith, the discretion it exercises is not "in its nature judicial." Judicial discretion involves such things as deciding which witness to believe, what sentence to impose, what damages the evidence justifies, whether there should be a deviation from the child support guidelines, and whether to grant a continuance of court proceedings. The list could go on and on, but the point is that these decisions are all judicial in nature. The Commission's decision on how to dispose of property is not judicial in nature when the statute allows it to be done in the sole discretion of the Commission. Therefore, the decision of how to classify and dispose of property is not adjudicative in nature.

Under the statutes, the Commission must determine what to do with a piece of property which is suitable for both public and private use, and presumably do so consistent with the statutory directive to return land to effect utilization to produce new tax revenues. The Land Reutilization Act is inherently contradictory, at least at the surface level, because the Commission is to foster the public purposes of returning land which is not generating revenue to effective utilization to provide housing, new industry, jobs, and "new tax revenue for the county." § 77-3201(2). But, such property can be sold on terms and conditions determined by the Commission in its sole discretion, or given away to a public entity. Selling a piece of property

appraised at $3,500 to a governmental entity, Springfield, for $1 is inconsistent with the statutory directive to produce new tax revenue. See, Neb. Const. art. VIII, § 2; § 77-202 (providing for exemption from taxation for public property). However, the Commission can make this choice given its statutory license to sell property in its inventory according to its sole discretion.

Given that the statute lists no facts which must be determined before land is disposed of, or upon which the disposition of property depends plus the freedom of the Commission to act in its sole discretion in the disposition of property, we conclude that its decision on how it disposes of land within its inventory is not ministerial, judicial, or quasi-judicial. Rather, the decision of how to dispose of property can only be seen as a matter of Commission policy or as a political decision of the Commission. As such, the decision of the Commission at issue here is not judicial in nature and is not subject to judicial review by a petition in error. We do not hold that the Commission can act with impunity, or that its actions are never subject to judicial review. However, we confine ourselves to the case before us, which is whether the district court acquired jurisdiction when the Board filed its petition in error. We hold that it did not. Thus, the district court's order affirming the Commission's action was a nullity and must be vacated. As was done in *Kropp v. Grand Island Pub. Sch. Dist. No. 2*, 246 Neb. 138, 517 N.W.2d 113 (1994), when the matter was found not reviewable by a petition in error, we dismiss this appeal, and we vacate the district court's order because that court lacked jurisdiction to enter it.

VACATED AND DISMISSED.